## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TAMMI F.,[1]               )
                                  )
            **Plaintiff,**     )
                                  )     **CIVIL ACTION**
**v.**                          )
                                  )     **No. 20-1079-JWL**
**ANDREW M. SAUL,**       )
**Commissioner of Social Security,**  )
                                  )
            **Defendant.**    )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of the medical opinion of Ms. Hubbard, the Advanced Practice Registered Nurse (APRN) (nurse-practitioner) who treated Plaintiff, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for DIB on August 23, 2017. (R. 10). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in weighing the opinion of Ms. Hubbard in that the ALJ found Ms. Hubbard's opinion somewhat persuasive but did not accept all the limitations she opined and did not explain why.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

2

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R.

§ 404.1520(e).  This assessment is used at both step four and step five of the sequential

evaluation process.  Id.

     The Commissioner next evaluates steps four and five of the process—determining

at step four whether, considering the RFC assessed, claimant can perform her past

relevant work; and at step five whether, when also considering the vocational factors of

age, education, and work experience, she is able to perform other work in the economy.

Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the

burden is on Plaintiff to prove a disability that prevents performance of past relevant

work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy which are

within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th

Cir. 1999).

## I.      Discussion

     Plaintiff points out the ALJ found Ms. Hubbard's opinion somewhat persuasive.

She notes Ms. Hubbard found Plaintiff markedly limited in the abilities to maintain

socially appropriate behavior and to maintain attention and concentration for extended

periods and argues the ALJ erred by failing to explain why these opinions, which conflict

with the RFC assessed, were not adopted.  She argues,

> The case law is clear that the ALJ must explain why she rejected some
> limitations contained in an RFC assessment while adopting others. The ALJ
> did not do so here.  Instead, the ALJ found Ms. Hubbard's opinion
> "somewhat persuasive" and did not explain why she rejected some of the
> limitations contained in the opinion.

(Pl. Br. 16) (relying, variously, on; Chapo v. Astrue, 682 F.3d 1285, 1291-92 (10th Cir. 2012); Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. April 3, 2007); Robinson v. Barnhart, 366 F.3d 1078, 1084-85 (10th Cir. 2004); Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004); Leah A. D. v. Saul, No. 19-1223-JWL, 2020 WL 2849475, at *6 (D. Kan. June 2, 2020); Booker v. Berryhill, No. 17-1319-JWL, 2018 WL 5311884, at *4 (D. Kan. Oct. 26, 2018); Forsberg v. Berryhill, No. 17-1087-JWL, 2018 WL 1471426, at *3 (D. Kan. March 26, 2018); Selkirk v. Berryhill, No. 166-2810-JWL, 2017 WL 5007156, at *5 (D. Kan. Nov. 2, 2017); Warzeka v. Colvin, No. 15-1118-SAC, 2016 WL 3902751, at *5 (D. Kan. July 19, 2016); Gonzales v. Colvin, No. 14-0249-LAM 2015 WL 13662717, at *5 (D.N.M. April 2, 2015); Brillhart v. Colvin, No. 14-1387-JWL, 2015 WL 7017439, at *2 (D. Kan. Nov. 10, 2015); Gutierrez v. Colvin, No. 12-cv-01668-WYD, 2013 WL 5200522, at *2 (D. Colo. Sept. 16, 2013); Lodwick v. Astrue, No. 10-1394-SAC, 2011 WL 6253799, at *4 (D. Kan. Dec. 13, 2011)).

Plaintiff acknowledges that the ALJ found the opinions of the state agency consultants, Dr. Smith and Dr. Anthony persuasive, but points out that the ALJ erroneously stated they examined Plaintiff whereas they only reviewed the record evidence before formulating their opinion.  (Pl. Br. 21).  Plaintiff argues, "Had the ALJ been aware of the lack of examining relationship between the consultants and [Plaintiff], she may have afforded the opinions less weight."  Id. (citing 20 C.F.R. § 404.1520c(3)(v)).  Moreover, she argues the ALJ's evaluation of the consultants' opinions does not explain why she accepted some of Ms. Hubbard's limitations while apparently rejecting others.  Id.

The Commissioner argues that the ALJ's decision is proper and is supported by the record evidence.  He argues that recently revised regulations control the consideration of medical opinions and prior administrative medical findings such as are at issue here; and provide five factors to consider, of which the two most important are supportability and consistency.  (Comm'r Br. 9-10).  He argues that pursuant to those regulations

> when a medical source provides multiple medical opinions or prior administrative medical findings, the Commissioner will articulate how he considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the applicable factors as appropriate.

Id. at 10 (citing 20 C.F.R. § 404.1520c(b)(1)).

He argues the ALJ found Dr. Smith's and Dr. Anthony's opinions persuasive, noting that they were supported by detailed explanations, identified inconsistencies between Plaintiff's allegations of symptoms and her reports of her activities and abilities, were consistent with evidence of improvement with medication, and consistent with relevant mental functional findings.  Id. at 10-11.  He acknowledges that the ALJ stated that Dr. Smith and Dr. Anthony examined Plaintiff but argues that is merely a scrivener's error.  Id. at 12.  He acknowledges the ALJ found Ms. Hubbard's opinion somewhat persuasive, finding her "limitation in social functioning supported by the record" but other portions of her assessment less persuasive.  Id.

He argues, "While some contradictory evidence may be found in the record, the issue is not whether Plaintiff's position was supported by substantial evidence, but whether the ALJ's decision was so supported."  Id. 13-14 (citing Perales, 402 U.S. at 401).  He points to record evidence supporting the ALJ's findings that (1) "Ms.

Hubbard's assessment was inconsistent with Plaintiff's improvement with psychiatric

medication, including Plaintiff's own reports in this regard" (Pl. Br. 12); (2) "Ms.

Hubbard's assessment was inconsistent with her own favorable mental functional

findings;" and (3) "Ms. Hubbard completed her assessment on a form that reflected

primarily the 'paragraph B' criteria." Id. at 15.  He also points out the ALJ discounted

Plaintiff's allegations of allegedly disabling symptoms. Id. at 18.

In her Reply Brief, Plaintiff argues the Commissioner misunderstands the

argument in her brief, explaining

> the issue here is not the ALJ's findings, but the ALJ's lack of findings and
> explanation regarding the remaining limitations in Ms. Hubbard's opinion;
> specifically, the limitations regarding maintaining socially appropriate
> behavior and maintaining attention and concentration for extended periods.

(Reply 2-3).  She argues, "Contrary to the Defendant's suggestion, however, the ALJ did

not find 'other portions' of the opinion less persuasive.  Instead, the ALJ was silent on

many portions of the opinion." Id. at 3.  She argues that although Ms. Hubbard's opinion

did not assess the functional abilities of Plaintiff, it is nonetheless a medical opinion that

Plaintiff has marked limitations "in the ability to maintain socially appropriate behavior

and the ability to maintain attention and concentration for extended periods," which

requires the ALJ to explain why her assessment conflicts with the opinion. Id. at 5.  She

argues the ALJ did not apply the correct legal standard and remand is required. Id. at 6.

## A.    The Standard Applicable

Effective March 27, 2017, the regulations changed the definition of "acceptable

medical source" to add licensed audiologists for certain impairments, and licensed

7

Advanced Practice Registered Nurses and licensed Physician Assistants within their licensed scope of practice.  Compare 20 C.F.R. § 404.1502 (2017), with 20 C.F.R. §§ 404.1502, 404.1513 (2016).  The regulation defines "medical opinion" and "prior administrative medical finding:"

> (2) Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …
>
> > (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> >
> > (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.
>
> ***
>
> (5) Prior administrative medical finding.  A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:
>
> > (i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

(iv) Your residual functional capacity;

(v) Whether your impairment(s) meets the duration requirement; and

(vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513(a)(4) (2017).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a) (2017). The regulation provides that the SSA will consider each medical source's opinions using five factors, supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5) (2017). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b) (2017). The articulation requirement applies for each source, but not for

each opinion of that source separately.  20 C.F.R. § 404.1520c(b)(1) (2017).  It requires

that the SSA "will explain how we considered the supportability and consistency factors

for a medical source's medical opinions or prior administrative medical findings in your

determination or decision.  We may, but are not required to, explain how we considered

the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we

articulate how we consider medical opinions and prior administrative medical findings in

your case record."  20 C.F.R. § 404.1520c(b)(2) (2017).  The regulation explains that

when the decision-maker finds two or more medical opinions or prior administrative

medical findings are equal in supportability and consistency "but are not exactly the

same," the decision will articulate the other most persuasive factors from paragraphs

(c)(3) through (c)(5).  20 C.F.R. § 404.1520c(b)(3) (2017).  Finally, the regulation

explains that the SSA is not required to articulate how it considered evidence from non-

medical sources.  20 C.F.R. § 404.1520c(d) (2017).

**B.**      **The ALJ's Findings**

The ALJ explained her evaluation of the opinions of Dr. Smith and Dr. Anthony

and of Ms. Hubbard:

> The undersigned finds the opinions of the state consultants, Dr. Smith and
> Dr. Anthony, who examined the claimant in October 2017 and December
> 2017 respectively, persuasive.  Both consultants opined that the claimant
> would be able to perform simple tasks in environments away from the
> general public.  1A/4-6, 4A/6 [(R. 57-59, 72)].  The undersigned finds these
> opinions persuasive in that they are supported by detailed explanation.  1A,
> 4A [(R. 54-64, 67-77)].  In addition, these opinions reconcile the claimant's
> statements as to her anxiety and reluctance to interact with others, with the
> evidence that she is able to interact on some level with her family, her son's
> teachers, and figures of authority.  4E/5-6 [(R. 187-88)].  Moreover, the
> opinions are consistent with the evidence that medication improved the

claimant's symptoms and with Ms. Hubbard's observations that the claimant's thought processes were logical and her judgment intact.  2F/1-3, 3F/1, 2E/5 [(R. 168, 425-27, 433)].  These opinions are generally consistent with the undersigned's residual functional capacity assessment.

The undersigned finds the medical opinion of Ms. Hubbard, who performed an evaluation of the claimant in January 2018 to be somewhat persuasive. 5F [(R. 449-51)].  Ms. Hubbard completed a form in which she checked boxes indicating the claimant's limitations with regard to the paragraph "B" criteria.  Significantly, the form does not provide an assessment of the functional ability of the claimant.  None-the-less the undersigned finds Ms. Hubbard's opinion that the claimant is markedly limited in her ability to interact with the general public, co-workers and peers, persuasive.  5F/2 [(R. 450)].  It is supported by her several years relationship with the claimant as well as claimant's own statements that she is reluctant to interact with others.

The undersigned finds less persuasive Ms. Hubbard's finding that the claimant had a marked limitation in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  5F/3 [(R. 451)].  The undersigned finds that this opinion is inconsistent with the evidence that the claimant's condition improves with medication.  It is also inconsistent with the claimant's own assertions to Ms. Hubbard in March 2017 that her mood was more stable, and with Ms. Hubbard's own assessments that the claimant's thought processes were logical and her judgment and insight appropriate.  2F/3 [(R. 427)].

(R. 16-17).

## C.   **Analysis**

As the Commissioner points, out new regulations were promulgated applying to cases filed on or after March 27, 2017 as was this case.  The new rules were adopted "[t]o account for the changes in the way healthcare is currently delivered."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017).  The new regulations "focus more on the content of medical

opinions <u>and less on weighing treating relationships</u> against each other [which] is more

consistent with current healthcare practice." <u>Id.</u> 82 Fed. Reg. at 5,854 (emphasis added).

The SSA explained, "By moving away from assigning a specific weight to medical

opinions, we are clarifying both how we use the terms 'weigh' and 'weight' in final

404.1520c(a), 404.1527, 416.920c(a), and 416.927 and also clarifying that adjudicators

should focus on how persuasive they find medical opinions and prior administrative

medical findings in final 404.1520c and 416.920c.  Our intent in these rules is to make it

clear that it is never appropriate under our rules to 'credit-as-true' any medical opinion."

<u>Id.</u> at 5,858.  The agency explained its view that

> Courts reviewing claims under our current rules [(applicable to cases filed
> before March 27, 2017)] have focused more on whether we sufficiently
> articulated the weight we gave treating source opinions, rather than on
> whether substantial evidence supports our final decision.  As the
> Administrative Conference of the United States' (ACUS) Final Report
> explains, these courts, in reviewing final agency decisions, are reweighing
> evidence instead of applying the substantial evidence standard of review,
> which is intended to be [a] highly deferential standard to us.

<u>Id.</u> Fed. Reg. 82 at 5,853.

It is clear that under the new regulations ALJ's are to focus on how persuasive a

medical source's opinions are and not on how much weight they should be or have been

given.  An ALJ is to base persuasiveness primarily on the factors of consistency and

supportability and must articulate in her decision how she considered these factors.  She

may, but is not required to, explain how she considered the other three factors:

relationship, specialization, and other factors tending to support or contradict an opinion.

The persuasiveness of the other three factors are only required to be articulated when the

decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same."  20 C.F.R. § 404.1520c(b)(3) (2017).

Here, the ALJ did just as the new regulations require.  She explained, based on the factors of consistency and supportability, how persuasive she found the opinions of Ms. Hubbard and of Dr. Smith and Dr. Anthony.  (R. 16-17 (as quoted supra)).  As Plaintiff suggests, SSR 96-8p contains a narrative discussion requirement providing that an ALJ must explain how any ambiguities and material inconsistencies in the evidence were considered and resolved.  West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2020). And, if the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion.  Id. at 150.  The ALJ's RFC assessment conflicts with Ms. Hubbard's opinions, and she explained why she did not adopt Ms. Hubbard's opinions—because she found them only somewhat persuasive.  More is not required under the new regulations.

Plaintiff alleges ambiguities and material inconsistencies for which, in Plaintiff's view, the ALJ did not explain her consideration and resolution.  However, Plaintiff's arguments, both that the ALJ was required to provide explanation for discounting every individual limitation in Ms. Hubbard's opinion, and that there remained ambiguities and material inconsistencies for which the ALJ provided no explanation, are firmly planted upon case law based on interpretation of the former regulations' requirement that ALJs weigh the medical opinions and explain the weight accorded to each opinion.  Chapo, 682 F.3d at 1289-92 (finding erroring in the ALJ's weighing of Dr. Vega's opinion); Haga,

482 F.3d at 1208 ("the ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' [sic] RFC assessment while appearing to adopt the others." (emphases added)); Robinson, 366 F.3d at 1082-85 (finding error in the ALJ's failure to give good reasons for the weight accorded Dr. Baca's treating source opinion); Hamlin, 365 F.3d at 1215-199 (finding error in the ALJ's weighing of the treating physician opinions of Dr. Brixey and Dr. Underhill); Leah A. D., 2020 WL 2849475, at *2-6 (finding error in the ALJ's relative weighing of the opinions of Dr. Brandhorst, Dr. Berg, and Dr. Adams); Booker, 2018 WL 5311884, at *3-4 (finding error in the ALJ's weighing of Dr. Berg's opinion pursuant to 20 C.F.R. §§ 404.1527, 416.927 (2016)); Forsberg, 2018 WL 1471426, at *2-3 (finding "remand is necessary to adequately explain the weight accorded Dr. Rubin's opinion and the reasons for that weight"); Selkirk, 2017 WL 5007156, at *5 ("The fact that the ALJ accorded significant weight to Dr. Blum's opinion, viewed in light of the fact that Dr. Blum was equivocal on Plaintiff's ability for sustained attention and concentration, produced an ambiguity which must be resolved in the narrative discussion of RFC, and the ALJ did not do so."); Warzeka, 2016 WL 3902751, at *5-6 (finding error in the relative weighing of the opinions of Dr. Holmes and Dr. Maxfield); Gonzales, 2015 WL 13662717, at *5-6 (finding error in the ALJ's relative weighing of the opinions of Dr. Gurdek, Dr. Toman, Dr. Burger, Dr. Baum, Dr. Walker and Dr. Chiang); Brillhart, 2015 WL 7017439, at *2 ("remand is necessary because the ALJ erroneously evaluated Dr. Geis's medical opinion"); Gutierrez, 2013 WL 5200522, at *2 ("the medical opinions were not properly weighed"); Lodwick, 2011 WL 6253799, at *4 (finding error where the ALJ accorded substantial weight to certain

medical opinions but did not include all their limitations).  The new regulations do not require the ALJ to articulate an explanation for how persuasive she finds every individual opinion of a medical source.  Moreover, the court may not reweigh the evidence and substitute its judgment for that of the ALJ.  Bowman, 511 F.3d at 1272; Casias, 933 F.2d at 800; Hackett, 395 F.3d at 1172; Bowling, 36 F.3d at 434; Harrell, 862 F.2d at 475.

The ALJ applied the correct legal standard.  The remaining issue before the court is whether substantial record evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") supports the decision.  The court finds it does.  Plaintiff argued, incorrectly, that the ALJ should have explained how she discounted each limitation opined by Ms. Hubbard.  But she did not argue that the record evidence compels a more restrictive RFC than assessed by the ALJ.  As has long been the case when evaluating an agency decision, Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff's argument that "[h]ad the ALJ been aware of the lack of examining relationship between [Drs. Smith and Anthony] and [Plaintiff], she may have afforded the

opinions less weight" (Pl. Br. 21) (citing 20 C.F.R. § 404.1520c(3)(v)) does not require a different result.  As Plaintiff's citation tacitly acknowledges, examining relationship is one of the three other factors considered, but not articulated, when evaluating a source's opinions.  As the Commissioner argues, the ALJ specifically stated Dr. Smith and Dr. Anthony are "state consultants."  (R. 16).  Moreover, she stated she had "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c."  Id., at 15.  This very strongly suggests a scrivener's error and that the ALJ knew these psychologists had reviewed the evidence to reach their opinions and had not examined Plaintiff.  Further, the ALJ found the opinions supported by and consistent with the evidence, the two primary factors, and cited evidence supporting her finding.  Id., at 17.  This also indicates that the lesser factor of relationship did not have an impact on the persuasiveness decision.

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated December 4, 2020, at Kansas City, Kansas.

s:/  *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**

16